IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| PATRICIA L. HAMMONS | : | No. 7 EAP 2019 |
| | : | |
| | : | Appeal from the Order of Superior |
| v. | : | Court entered on June 19, 2018 at |
| | : | No. 1526 EDA 2016 (reargument |
| | : | denied August 29, 2018) affirming |
| ETHICON, INC. AND JOHNSON & | : | the Judgment of the Court of |
| JOHNSON; GYNECARE; SECANT | : | Common Pleas, Philadelphia |
| MEDICAL; SECANT MEDICAL INC.; | : | County, Civil Division entered on |
| PRODESCO, INC.; AND SECANT | : | April 14, 2016 at No. 3913 May |
| MEDICAL, LLC | : | Term, 2013. |
| | : | |
| | : | ARGUED: March 10, 2020 |
| APPEAL OF:  ETHICON, INC. AND | : | |
| JOHNSON & JOHNSON | : | |

**OPINION**

**JUSTICE BAER**                                          **DECIDED:  October 21, 2020**

This case presents a challenge to the exercise of specific personal jurisdiction in Pennsylvania over New Jersey corporate defendants in a case filed by an Indiana resident regarding injuries allegedly caused by a pelvic mesh medical device implanted in Indiana. While the device was assembled by the defendants out of state, the mesh component of the device was manufactured by a separate entity in Pennsylvania. After reviewing recent decisions from the United States Supreme Court revising its personal jurisdiction jurisprudence, we conclude that the imposition of personal jurisdiction in this case meets the relevant constitutional and statutory requirements. Accordingly, we affirm the judgment of the Superior Court.

**I. Factual and Procedural History**

Appellee-Plaintiff Patricia Hammons ("Hammons") is an Indiana resident who suffered significant injuries following the May 2009 implantation in Indiana of Appellant-Defendant Ethicon, Inc.'s Prolift Kit, which is a medical device used to treat "medical conditions in the female pelvis, primarily pelvic organ prolapse and/or stress urinary incontinence." Plaintiffs' Master Long Form Complaint ("Master Complaint") at ¶ 23. She received treatment for the injuries in Indiana and Kentucky.[1]

The Prolift Kit includes mesh, which has been cut to a specific shape, along with tools to implant it and instructions. The mesh is "woven from filaments of polypropylene and/or other non-biological substances designed and intended to be permanently implanted through surgery in the human body." *Id.*

As is relevant to the jurisdictional question before us, all parties agree that the mesh is the only aspect of the Prolift Kit produced in Pennsylvania. Ethicon contracted with Secant Medical, Inc. ("Secant"), a Bucks County manufacturer, to weave the mesh according to Ethicon's specifications from Ethicon's proprietary polypropylene filament. As the characteristics of the mesh and the production process are central to the issues in this case, we set forth the details as described in an affidavit by a Secant officer:

> Ethicon supplies Secant with spools of PROLENE™ polypropylene filament, which Secant, in response to purchase orders, knits to produce large rolls of mesh per specifications provided and required by Ethicon. Ethicon's specifications govern various characteristics of the mesh, including its elasticity, density, mass, and areal density. Ethicon establishes the specifications for the knitting of the mesh component[,] and Secant is required to follow these specifications. Once the PROLENE™ polypropylene filaments are knit into mesh, samples of the mesh are

---

[1] As our review of this case is limited to the question of jurisdiction over out-of-state defendants, we will not recount the extensive factual history of Ms. Hammons' significant injuries, which is set forth in detail in the Superior Court decision, *Hammons v. Ethicon, Inc.*, 190 A.3d 1248, 1254-58 (Pa. Super. 2018).

measured for width, courses, wales, thickness, areal density, and elasticity, and are then ball burst tested. These measurements are taken and recorded to ensure that Secant has knit the mesh per Ethicon's specifications, and Secant completes a Certificate of Conformance for each lot that attests to the mesh's compliance with Ethicon's specifications. Secant then ships the large rolls of mesh to other Ethicon facilities unrelated to Secant where further manufacturing occurs.

Affidavit of Karen West, dated June 2, 2014, at ¶ 5.

In May 2013, Hammons filed a complaint in the Philadelphia Court of Common Pleas against Ethicon, Johnson & Johnson, Gynecare,[2] and Secant, asserting various claims related to the implanted device. Ethicon is a wholly-owned subsidiary of co-defendant Johnson & Johnson, both of which are headquartered and incorporated in New Jersey (jointly "Ethicon").

After initially being removed to federal court based on Ethicon's claim of diversity jurisdiction, the case was eventually remanded to the Philadelphia Court of Common Pleas, where it was transferred in March 2014 to the Complex Litigation Center Pelvic Mesh Mass Tort Program, which has been coordinated under the caption *In re Pelvic Mesh Litigation* and docketed as Master Docket Number February Term 2014, No. 829 ("Master Docket").[3] The Master Docket included plaintiffs who were residents of

---

[2] Gynecare, initially named as a defendant, was a division of Ethicon.

[3] The Superior Court summarized the history of Philadelphia's mass tort program:

In 1992, the Philadelphia Court of Common Pleas initiated the Mass Tort Program to deal efficiently with large numbers of complex but similar tort cases by coordinating and streamlining pleadings, discovery, pretrial motions, and trial. The legal foundation for the Program is Pa.R.Civ.P. 213, which authorizes courts to consolidate related cases and issue case management orders for their efficient disposition.

*Hammons*, 190 A.3d at 1260.

Pennsylvania and over one hundred plaintiffs who, like Hammons, were neither residents of Pennsylvania nor had the device implanted in Pennsylvania (jointly "Plaintiffs").

On March 31, 2014, the court entered Case Management Order No. 1. In it, the court set forth procedures for Plaintiffs to file a "Master Long Form Complaint" and individual "Short Form Complaints." It declared that the Master Complaint would "substitute and supersede all [c]omplaints filed in individual Pelvic Mesh Cases pending in the Philadelphia County Court of Common Pleas," which included Hammons' complaint. Order, dated March 31, 2014, at 3. The court decreed that the defendants could file Master Preliminary Objections as well as a Master Answer in response to the Master Complaint. The order specified that the court's "ruling on the Master Preliminary Objections will be binding on all current and future Pelvic Mesh Cases." *Id. at 3.*

The case management order explained that, after the expiration of the deadlines for Master Preliminary Objections, each plaintiff should file an individual Short Form Complaint in a form proposed by the Plaintiffs and agreed to by the Defendants. *Id.* at 3-4. On the Short Form Complaint, the individual plaintiffs could incorporate by reference those counts of the Master Complaint that applied to them and raise any additional claims specific to their situation. Any defendants named in a Short Form Complaint were allowed to file preliminary objections relevant to the new issues raised in that individual complaint.

Plaintiffs filed the Master Complaint in May 2014 against ten defendants raising eighteen claims. Plaintiffs asserted, without development, that jurisdiction over the defendants was based upon Pennsylvania's general personal jurisdiction statute, 42 Pa.C.S. § 5301, *infra* at 9 n.7. Master Complaint at ¶ 20.

As relevant to Hammons' claim, Plaintiffs alleged that Ethicon "designed, manufactured, packaged, labeled, marketed, sold, and distributed" the Prolift Kit. Master Complaint at ¶ 25. Plaintiffs also named Secant as a defendant, claiming that it "designed,

tested, inspected, wove, knitted, cut, treated, packaged, manufactured, marketed, and/or sold a mesh made from polypropylene and/or other synthetically derived filaments that was the actual mesh utilized" in Ethicon's Prolift Kits. *Id.* at ¶ 41. The complaint further averred that "no changes" are made to the mesh produced by Secant until it is cut by Ethicon, and it asserted that the mesh "is what remains in the woman's pelvic area." *Id.* at ¶ 42.

Plaintiffs stated that the Defendants' products were "promoted to physicians and patients as an innovative, minimally invasive procedure with minimal local tissue reactions, minimal tissue trauma and minimal pain while correcting vaginal prolapse, stress urinary incontinence, pelvic organ prolapse and/or rectocele."[4] *Id.* at ¶ 44. Plaintiffs, however, claimed that the polypropylene mesh "was biologically incompatible with human tissue and promote[d] an immune response" that resulted in "degradation of the polypropylene mesh, as well as the pelvic tissue" and could "contribute to the formation of severe adverse reactions to the mesh." *Id.* at ¶ 45. They averred that the devices had "high malfunction, failure, injury, and complication rates, fail to perform as intended, require frequent and often debilitating re-operations, and have caused severe and irreversible injuries, conditions, and damage to a significant number of women, including Plaintiffs." *Id.* at ¶ 51.

As relevant to Ethicon, Plaintiffs identified the following as defective aspects of the Prolift Kit specifically related to the mesh:

> a. the use of polypropylene material in the mesh itself and the immune reaction that results, causing adverse reactions and injuries;
>
> * * * *

---

[4] A rectocele is a posterior vaginal prolapse caused by a weakening of the wall between the vagina and rectum.

c. the design of the Pelvic Mesh Products to be inserted transvaginally into an area of the body with high levels of bacteria, yeast, and fungus that adhere to the mesh causing immune reactions and subsequent tissue breakdown and adverse reactions and injuries;

* * * *

e. [b]iomechanical issues with the design of the mesh that create strong amounts of friction between the mesh and the underling tissue that subsequently cause that tissue to degrade resulting in injury;

f. the lack or porosity in the mesh resulting in the formation of scar plate that prohibits the tissue in-growth, resulting in mesh contractions, nerve damage, pain and erosion of the mesh into other organs, and failure of the device;

* * * *

h. degradation of the mesh itself over time which causes the internal tissue to degrade resulting in injury;

i. particle loss and or "shedding" of the mesh both during implantation and following implantation that results in additional undesirable complications including an increased inflammatory response and a migration of those particles resulting in injury;

j. the welding and heating of the mesh itself during production which creates a toxic substances [sic] that contributes to the degradation of the mesh and host tissue alike.

* * * *

l. the propensity of the mesh for "creep" or to gradually elongate and deform when subject to prolonged tension inside the body;

m. the propensity of the mesh to contract, retract, and/or shrink inside the body;

n. the inelasticity of the mesh, causing them to be improperly matted to the delicate and sensitive areas of the vagina and

penis where they are implanted, and causing pain upon normal daily activities that involve movement in the pelvic region (e.g. intercourse, defecation, walking)[.]

Master Complaint at ¶ 51. Included in the counts asserted in the Master Complaint were strict liability claims of failure to warn the Plaintiffs of various risks related*, inter alia*, to the mesh, *id.* at ¶ 127, and design defects including those related to the mesh, *id.* at ¶ 136.

Ethicon filed preliminary objections in June 2014 to the Master Complaint but did not include objections to personal jurisdiction. Ethicon later explained that it could not have contested personal jurisdiction via preliminary objections to the Master Complaint because the complaint did not contain "Plaintiff-specific jurisdictional information such as state of residence or implant surgery." Ethicon Reply in Support of Motion to Dismiss for Lack of Jurisdiction at 4. Moreover, Ethicon argued that a preliminary objection raising lack of jurisdiction to the Master Complaint would have been improper because jurisdiction existed in regard to the claims of the Plaintiffs who were Pennsylvania residents. *Id.* at 4. Instead, it argued that the appropriate filing would be preliminary objections to the individual Short Form Complaints of the non-Pennsylvania plaintiffs, which it later filed.

Secant filed preliminary objections to the Master Complaint asserting its immunity under the Biomaterials Access Assurance Act of 1998, 21 U.S.C. §§ 1601-1606, which provides that biomaterial suppliers "shall not be liable for harm to a claimant caused by an implant," if certain conditions are met. 21 U.S.C. § 1604(a). In August 2014, the trial court agreed and dismissed the claims against Secant. In so doing, the court made several findings required for deeming Secant immune under the federal act, including holding that Secant was a "biomaterials supplier," was "not a manufacturer" or "a seller of the implant," "did not provide any component parts for the implant that failed to meet applicable contractual requirements," and "was not related to the manufacturers of the

implant . . . by common ownership or control." Tr. Ct. Order of Aug. 22, 2014; 21 U.S.C. § 1604.[5]

On September 29, 2014, Ethicon filed a motion to dismiss for lack of personal jurisdiction on the Master Docket in regard to 118 Plaintiffs, including Hammons, who were not Pennsylvania residents and had neither received the implant surgery nor suffered related injury in the Commonwealth.[6] Ethicon asserted that neither general nor specific personal jurisdiction was proper as to the non-Pennsylvania residents. In regard to general personal jurisdiction, Ethicon highlighted the then-recent decision of the United States Supreme Court in *Daimler AG v. Bauman,* 571 U.S. 117 (2014), which, as discussed in detail *infra*, limited the applicability of general jurisdiction to those states where a corporation is incorporated or maintains its principal place of business, absent unusual circumstances. Premised on *Daimler*, Ethicon asserted that general jurisdiction was not appropriate in Pennsylvania because New Jersey was Ethicon's state of incorporation and principal place of business. It rejected Plaintiffs' invocation of the business it conducted in Pennsylvania, observing that the High Court clarified in *Daimler* that a "substantial, continuous, and systemic course of business" in the forum state is not sufficient to establish general jurisdiction. Ethicon's Motion to Dismiss Letter Brief at 7 (quoting *Daimler*, 571 U.S. 137-38).

---

[5] In considering Secant's motion, the court admitted three affidavits of Secant and Ethicon employees, which the parties have relied upon to describe the relationship between the two companies as it related to Ethicon's jurisdictional connections to Pennsylvania, and specifically to the production of the mesh used in the Prolift Kit. The affidavits were submitted by James 0. Williams, Jr., Ethicon's Strategic Sourcing Manager; Eric Nadeau, President of Secant; and Karen West, an Officer of Secant.

[6] Ethicon also raised the lack of personal jurisdiction as a New Matter. Ethicon Master Answer and New Matter at 36.

Ethicon next turned to specific personal jurisdiction. It argued that specific jurisdiction should be "analyzed on a claim-specific basis, meaning that 'personal jurisdiction over one of the defendants as to a particular claim asserted by [the plaintiff] does not necessarily mean that [the court] has personal jurisdiction over that same defendant as to [the plaintiff's] other claims." Ethicon's Motion to Dismiss Letter Brief at 5 (quoting *Remick v. Manfredy*, 238 F.3d 248, 255 (3rd Cir. 2001)). It maintained that specific jurisdiction was inappropriate over the claims of the Plaintiffs who were not residents of Pennsylvania and had not suffered injuries resulting from implantation of the device in Pennsylvania. It later urged the court to reject Plaintiffs' attempt to rely upon Ethicon's dealings with Secant in Pennsylvania, asserting that "Plaintiffs' tort claims arise out of their implant surgeries in other states; they do not arise out of Ethicon's limited act of sending raw materials to Secant in Pennsylvania." Ethicon's Reply in Support of Motion to Dismiss for Lack of Jurisdiction at 6.

On October 6, 2014, Plaintiffs filed their preliminary response to Ethicon's motion to dismiss for lack of personal jurisdiction ("Preliminary Response"). Plaintiffs first asserted that Ethicon waived the jurisdictional challenge by failing to raise it as a Master Preliminary Objection. They next claimed that jurisdiction was proper under the general personal jurisdiction provision of 42 Pa.C.S. § 5301(a)(2)(iii), which in relevant part provides for jurisdiction over a corporation that carries "on a continuous and systematic part of its general business within this Commonwealth." Preliminary Response at 5 (quoting 42 Pa.C.S. § 5301(a)(2)(iii))[7]

---

[7] Section 5301, entitled "Persons," provides as follows in regard to general personal jurisdiction over corporations:

> (a) General rule. - The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the

Plaintiffs acknowledged that jurisdiction must also satisfy the due process requirements of the federal constitution as informed by United States Supreme Court's recent precedent. They emphasized, however, that the High Court had provided a potential exception to *Daimler's* restrictive view of general jurisdiction for cases where a corporation's contacts with the forum state may be "so substantial and of such a nature as to render the corporation at home in that state," even if it was not headquartered or incorporated in the state. Preliminary Response at 7 (quoting *Daimler*, 571 U.S. at 139 n.19). Plaintiffs claimed that publically available information suggested that Ethicon's contacts "with Pennsylvania are indeed so large and extraordinary that it fairly can be said that these defendants are 'at home' in Pennsylvania." *Id.*

Plaintiffs also asserted that Ethicon was subject to specific personal jurisdiction based upon its "extensive contacts with Pennsylvania[,]" emphasizing that it had

tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

\* \* \* \*

(2) Corporations. -

(i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.

(ii) Consent, to the extent authorized by the consent.

(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa.C.S. § 5301(a)(2).

"intentionally developed a deep affiliation with Pennsylvania specifically relating to their pelvic mesh products." Preliminary Response at 13. They averred that Ethicon had a "long-standing relationship" with Secant in Bucks County. *Id.* Reiterating details set forth in the affidavits of the Secant and Ethicon employees discussed *supra*, Plaintiffs further emphasized that Ethicon "supplied Secant with raw materials (in Pennsylvania) and then controlled every aspect of how Secant (in Pennsylvania) wove those raw materials into the mesh" used in the Prolift device. *Id.* They additionally highlighted numerous meetings in Pennsylvania between Ethicon and Secant employees regarding the "mesh design, development, manufacturing, quality control, and testing; and Secant's certification of its conformance with [Ethicon's] product specifications upon the completion of manufacturing runs and follow-up testing." *Id.* at 15. While maintaining the then-existent information was sufficient for the imposition of either general or specific personal jurisdiction, Plaintiffs nevertheless filed a motion to take additional discovery to address the jurisdictional question, which the trial court granted.

On the same day that Hammons filed her response to Ethicon's motion to dismiss, she also filed her Short Form Complaint pursuant to the Case Management Order, which retained her original docket number of May Term, 2013, No. 3913 ("Individual Docket"). As the name implies, the Short Form Complaint constituted a sparse nine-page form, populated by boxes for the individual plaintiff to indicate which of the ten defendants was applicable to her case, which of the over forty medical devices was implanted, and which of the eighteen counts the plaintiff incorporated by reference. In addition, the form included various spaces to provide identifying information regarding the individual plaintiff, details of the product implanted such as serial numbers, and information regarding the surgery and subsequent treatment. The document also included spaces for asserting other claims against defendants.

In her Short Form Complaint, Hammons named Ethicon, Johnson & Johnson, and Secant as defendants and Prolift as her implanted device. Hammons indicated that she was raising seventeen counts, sounding, *inter alia,* in strict liability, fraud, breach of warranty, and negligence. She did not assert any additional claims not raised in the Master Complaint.

Later in October 2014, Ethicon filed preliminary objections on Hammons' Individual Docket reasserting that Pennsylvania lacked personal jurisdiction because Hammons was not a Pennsylvania resident and she did not allege that her injury occurred in Pennsylvania. To support its motion on the Individual Docket, Ethicon referenced the analysis set forth in the omnibus motion to dismiss filed on the Master Docket.

Hammons responded, claiming that Ethicon had waived its jurisdictional challenge by not raising a preliminary objection to the Master Complaint, emphasizing that Pennsylvania Rule of Civil Procedure 1028(a)(1) requires that jurisdictional challenges be raised via preliminary objection. Hammons asserted that the Case Management Order Number 1 limited preliminary objections to the Short Form Complaints to challenges relating to additional claims not included in the Master Complaint, observing that she had not raised any additional claims in her Short Form Complaint. She argued that the delayed filing resulted in her being unable to file in a different jurisdiction because the statute of limitations had run on her claims. Hammons' Letter Response, dated Nov. 12, 2014, at 5. Hammons additionally incorporated the Plaintiffs' substantive arguments set forth in the omnibus response on the Master Docket, discussed *supra*.

Following supplemental discovery on the jurisdictional question, Plaintiffs filed a letter brief in February 2015 on the Master Docket. In it, Plaintiffs asserted that "Ethicon . . . undertook acts in Pennsylvania relating to the production of the mesh at issue in this case" and "conducted marketing programs in Pennsylvania that are directed

to Pennsylvania physicians." Plaintiffs' Supplemental Letter Brief in Support of their Response in Opposition to [Ethicon's] Motion to Dismiss For Lack of Personal Jurisdiction ("Supplemental Response"), filed Feb. 12, 2015, at 4. The Plaintiffs attached a chart detailing numerous visits between 1998-2013 by Ethicon employees to Secant's facilities to "supervise, direct, and guide Secant regarding the design and manufacture of the mesh that Ethicon used in its pelvic mesh products." Affidavit of Lee. B. Balefsky, signed Feb. 12, 2015, at 3, attached as Exhibit A to Plaintiffs' Supplemental Response.

In its supplemental filing, Ethicon rejected Hammons' attempt to use Ethicon's interactions with Secant as the basis for specific jurisdiction. It emphasized that Secant did not act as Ethicon's alter-ego and that Ethicon did not exercise any control over Secant's "administration, general maintenance, accounting, or corporate management and organization." Ethicon's Supplemental Submission in Support of Motion to Dismiss at 7-8. It asserted that Plaintiffs' claims did not arise out of Secant's involvement in manufacturing the mesh.[8]

On March 30, 2015, the trial court denied Ethicon's motion to dismiss for lack of personal jurisdiction filed on the Master Docket and entered a separate order denying the preliminary objections challenging jurisdiction on the dockets of the Short Form Complaints filed by over ninety non-Pennsylvania Plaintiffs, including Hammons. Neither order provided reasoning in support of the determination.

In December 2015, following various proceedings not directly relevant to the issues on appeal, the trial court conducted a three-week trial on Hammons' individual claims of "design defect and failure to warn sounding in strict liability and negligence" under Indiana

---

[8] In regard to the number of meetings Ethicon conducted with Secant, Ethicon observed that the forty-one meetings alleged to have occurred over a fifteen-year period averaged to only three meetings a year, which Ethicon argued did not justify the invocation of jurisdiction. *Id.*

products liability law.[9] Tr. Ct. Op., dated Sept. 30, 2016, at 2. The jury found in favor of Hammons and awarded her $5.5 million in compensatory damages and assessed an additional $7 million in punitive damages. Following resolution of post-trial motions, the trial court additionally imposed delay damages, calculated with regard to compensatory but not punitive damages resulting in a total judgment against Ethicon of $12,850,945.18.

Ethicon appealed the judgment to the Superior Court raising ten issues, including asserting that the trial court lacked personal jurisdiction over Ethicon, in part because Hammons' claims "did not arise from or relate to" any of Ethicon's contacts with Pennsylvania. *Hammons v. Ethicon, Inc.*, 190 A.3d 1248, 1259 (Pa. Super. 2018).[10] While the trial court addressed the multitude of Ethicon's other issues, it unfortunately did not address Ethicon's assertion of error as to personal jurisdiction in its Pa.R.A.P. 1925(a) opinion.[11]

---

[9] Hammons' case was apparently the first of the pelvic mesh cases to go to trial in Philadelphia. Hammons' Brief at 8.

[10] Hammons cross-appealed asserting error in the trial court's molding of the verdict. As personal jurisdiction is the only issue before this Court, we will not address the other issues raised before the Superior Court.

[11] We observe that the trial court supervising the Pelvic Mesh Mass Tort Program issued an opinion in May 2018 on the jurisdictional question, following its grant of reconsideration in August 2017 of Ethicon's Motion to Dismiss in light of *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773 (2017) ("*BMS*") . This decision on the Master Docket does not apply to Hammons' case, which was then pending in Superior Court, but does control the Plaintiffs' cases then pending in the trial court.

The court articulated that Plaintiffs had conceded that general personal jurisdiction was not supported, leaving only specific personal jurisdiction which "must arise out of or relate to the defendant's contacts with the forum." Tr. Ct. Op., dated May 18, 2018, at 7 (quoting *BMS*, 137 S. Ct. at 1780). The trial court sustained jurisdiction as to all remaining Plaintiffs whose implant utilized mesh knitted by Secant in Pennsylvania but dismissed those involving mesh produced outside of Pennsylvania. *Id.* at 5.

As observed in note 11, while Hammons' case was pending before the Superior Court, the United States Supreme Court issued its decision in *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773 (2017) ("*BMS*"), addressing personal jurisdiction as will be discussed in detail below. Accordingly, the Superior Court accepted supplemental briefing to apply this decision to the case at bar.

The Superior Court subsequently concluded that Ethicon did not waive its challenge to personal jurisdiction by failing to file a preliminary objection on the Master Docket, reasoning that "[t]he case management order restrict[ed] preliminary objections to the Long Form Complaint to issues that apply to all pelvic mesh cases." *Hammons*, 190 A.3d at 1260 (emphasis removed). As Ethicon did not and could not challenge jurisdiction in regard to Plaintiffs who were Pennsylvania residents, the court determined that Ethicon properly raised the issue at the first viable opportunity in its preliminary objections to Hammons' Short Form Complaint on her Individual Docket.

Turing to the merits of the jurisdictional dispute, the Superior Court recognized that general personal jurisdiction was not met in this case under the criteria set forth in *Daimler*, 571 U.S. 117, because Ethicon was neither incorporated nor headquartered in

---

Noting that the Master Complaint originally included a manufacturing defect claim, the court opined that "[t]he existence of this manufacturing defect claim grants this [c]ourt specific jurisdiction because . . . Secant is involved in the manufacturing process." *Id.* at 11-12. The court concluded that "the exercise of personal jurisdiction over [Ethicon] comports with the notion of fair play and substantial justice because[,] for at least the past seventeen years, [Ethicon] purposefully availed themselves of the privilege of conducting activities in the Commonwealth by contracting with a Pennsylvania manufacturers [sic], Secant Medical, Inc., to perform a portion of the manufacturing process." *Id.* at 12.

Subsequently, the Superior Court affirmed the trial court's decision on the Master Docket. Ethicon sought review in this Court, 206 EAL 2019, which has been placed on hold pending the decision in the case at bar.

Pennsylvania. *Hammons*, 190 A.3d at 1261. The court next observed that a Pennsylvania court's exercise of specific personal jurisdiction over the resident of another state requires compliance with the Commonwealth's long arm statute, 42 Pa.C.S. § 5322, and, in turn, the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[12]

---

[12] Section 5322, entitled "Bases of personal jurisdiction over persons outside this Commonwealth," provides in relevant part as follows:

> (a) General rule. - A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

> * * * *

> (3) Causing harm or tortious injury by an act or omission in this Commonwealth.

> * * * *

> (b) Exercise of full constitutional power over nonresidents. - In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

> (c) Scope of jurisdiction. - When jurisdiction over a person is based solely upon this section, only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him.

> * * * *

42 Pa.C.S. § 5322.

The court observed that Section 5322 sets forth acts which trigger jurisdiction in ten paragraphs, including, although not specified by the Superior Court, subparagraph (a)(3) allowing the exercise of jurisdiction over an entity "[c]ausing harm or tortious injury by an act or omission in this Commonwealth." *Id.* Additionally, the court described subsection (b) which provides a catch-all instructing that jurisdiction of the Commonwealth's tribunals shall extend "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). The court additionally noted that subsection (c) limits the scope of jurisdiction that can be asserted under Pennsylvania's long arm statute, providing that "only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him." *Id.* § 5322(c).

In evaluating the applicability of specific personal jurisdiction, the Superior Court looked to the United States Supreme Court's recent decision in *BMS* interpreting the due process protections of the United States Constitution for guidance in determining the extent of the jurisdiction allowed by Subsection 5322(b).[13] The Superior Court viewed the High Court as requiring, for specific personal jurisdiction, demonstration of "suit-related conduct, *i.e.*, a connection between the forum and the specific claims at issue, 'principally, an activity or occurrence that takes place in the forum State.'" *Hammons*, 190 A.3d at 1262-63 (quoting *BMS,* 137 S.Ct. at 1781). The intermediate court recognized that "a defendant's general connections with the forum state are not enough." *Id.* at 1263.

Applying the principles of *BMS*, the Superior Court concluded that the connections between Ethicon and Pennsylvania were "considerably stronger" than those deemed

---

[13] A full summary of *BMS* is set forth *infra* at 31.

insufficient in *BMS*. *Id.* It relied upon two categories of connections. *Id.* First, the court highlighted the interaction between Ethicon and Secant in Pennsylvania "to design, test and manufacture the Prolift mesh." *Id.* The court summarized the evidence detailing Ethicon's involvement in and close supervision of Secant's production of the mesh. It additionally opined that "[e]mails between Ethicon and Secant officials demonstrate[d] that Ethicon repeatedly communicated its requirements for mesh design and development, manufacturing, quality control, testing, and certification to Secant - all issues central to this litigation." *Id.* at 1263. Finally, the court highlighted the repeated visits by Ethicon employees to the Secant facility during the mesh production process. Emphasizing that Hammons averred that she was injured as a result of the properties of the mesh manufactured by Secant, the Superior Court opined that this evidence "establish[ed] an affiliation between Pennsylvania and Hammons' cause of action against Ethicon for defective design of the Prolift device." *Id.*

The Superior Court next considered evidence presented at trial relating to Ethicon's interactions with an Allentown gynecologist, Dr. Vincent Lucente, regarding the development, testing, and marketing of Prolift, evidence that was not before the trial court when evaluating Ethicon's preliminary objections relating to personal jurisdiction. *Id.* at 1263 (citing Notes of Testimony, Dec. 8, 2015 (AM), at 19–60). The court opined that because it could affirm the trial court's ruling on any basis, it "need not confine [its] reasons for affirming to evidence adduced during proceedings on Ethicon's preliminary objections to jurisdiction." *Id.* at 1263 n.6.

The Superior Court summarized the evidence concerning Dr. Lucente that it viewed as relevant to the jurisdictional question. It noted that he had served as an investigator in three clinical studies of the mesh used in the Prolift device. *Id.* at 1263-64. The court also cited to evidence that demonstrated Ethicon's reliance upon Dr. Lucente

to assist with the marketing and development of the product. The court observed that "Dr. Lucente interceded on Ethicon's behalf to persuade the American College of Obstetricians and Gynecologists to remove a designation of these mesh procedures as 'experimental.'" *Id.* at 1264. The court concluded that these connections between Ethicon and Dr. Lucente in Pennsylvania demonstrated a sufficient connection between Ethicon and Pennsylvania in regard to Hammons' design defect claim to permit specific personal jurisdiction in Pennsylvania under the new guidance set forth in *BMS.*[14]

Based on Ethicon's involvement in the manufacturing of the mesh by Secant and with Dr. Lucente, the Superior Court concluded that specific personal jurisdiction in Pennsylvania was proper under *BMS* and affirmed the trial court's order denying of Ethicon's motion to dismiss. The court additionally affirmed the trial court "in all respects" after addressing the other issues raised by Ethicon and Hammons, which, as said, are not before this Court. *Id.* at 1254.

### II. Parties' Arguments

Ethicon sought and this Court granted allowance of appeal to address whether the trial court lacked personal jurisdiction over Ethicon.[15] Before this Court, Ethicon focuses

---

[14] The Superior Court focused on Ethicon's connections to Pennsylvania in relation to Hammons design defect but did not speak to whether those connections would also relate to Hammons' failure to warn claims.

[15] We granted review limited to the following question, as phrased by Ethicon:

> Whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 Pa.C.S. § 5322(c) precludes Pennsylvania from asserting personal jurisdiction over two New Jersey companies in a case brought by an Indiana resident asserting claims under the Indiana Product Liability Act.

*Hammons v. Ethicon, Inc.*, 206 A.3d 495 (Pa. 2019).

on Subsection 5322(c) of Pennsylvania's long arm statute, entitled "Scope of jurisdiction," which limits the reach of Pennsylvania's jurisdiction to "only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b)."[16] 42 Pa.C.S. § 5322(c). As set forth above, subsection (a) enumerates a list of actions that create jurisdiction, including as relevant to Ethicon "[c]ausing harm or tortious injury by an act or omission in this Commonwealth," and subsection (b) allows jurisdiction "to the fullest extent allowed" under the federal constitution. 42 Pa.C.S. § 5322.

Ethicon asserts that subsection (c)'s use of the term "cause of action," rather than "lawsuit," mandates a claim-by-claim analysis of jurisdiction. Ethicon's Brief at 23. It rejects what it views as the Superior Court's and Hammons' framing of the test as merely requiring "that there are acts in Pennsylvania that are 'affiliated' with the case or in some small way related to the case as a whole." *Id.* at 17-18. It critiques Hammons' formulation as being difficult to apply as it is unclear what level of affiliation is required. Instead, it maintains that there must be a nexus between each of the plaintiff's claims and the conduct of the defendant in the forum state. Ethicon's Reply Brief at 2. In support, it highlights the Supreme Court's focus in *BMS* on "'conduct giving rise to the nonresidents' claims' and the 'connection between the forum and the specific claims at issue.'" *Id.* (quoting *BMS,* 137 S.Ct. at 1781-82).

Applying a claim-by-claim jurisdictional analysis to this case, Ethicon contends that "the critical question is whether the conduct giving rise to [Hammons'] claims - the design of Prolift Kit and the creation of its warnings before 2005 - took place in Pennsylvania." Ethicon's Brief at 3. Ethicon emphasizes that Hammons fails to assert any jurisdictionally significant acts that would tie Ethicon to Pennsylvania for purposes of her failure to warn

---

[16] Section 5322 is set forth in relevant part *supra* at 16 n.12.

claim, given that neither Secant nor Dr. Lucente were alleged to have been involved in the drafting of the warnings.

Turning to the design defect claim, Ethicon asserts that the facts do not support the conclusion that a design defect claim arose out of Ethicon's actions in Pennsylvania. Ethicon rejects Hammons' contention that jurisdiction is proper because her claim involves the properties of the mesh and the mesh was made in Pennsylvania. It counters that her design defect claim challenges not the properties of the mesh but, instead, the decision to use the mesh. Ethicon emphasizes that the decision to use the mesh produced by Secant, as opposed to another mesh with different properties, resulted from conduct in New Jersey and France, not Pennsylvania. Ethicon's Brief at 18; Ethicon's Reply Brief at 5.

Ethicon rejects the Superior Court's finding that it "worked together with Secant in Pennsylvania to design, test, and manufacture the Prolift mesh." Ethicon's Brief at 30 (quoting *Hammons,* 190 A.3d at 1263). In support, Ethicon emphasizes that the trial court dismissed Secant as a defendant after determining it was immune as a component supplier under the Biomaterials Access Assurance Act of 1998, a holding which required the court to determine that Secant was not a "manufacturer" of the medical device, but instead that Secant merely met the "applicable contractual requirements" mandated by Ethicon. 21 U.S.C. § 1604(a). Thus, given that Secant was a component manufacturer not involved in the design of the mesh, Ethicon argues that the location of Secant and its actions in Pennsylvania cannot create jurisdiction over Ethicon related to Hammons' design defect claim.

In regard to Dr. Lucente, Ethicon notes that evidence relating to him was not presented to the trial court prior to its jurisdictional determinations. Instead, the Superior Court relied upon details of the interactions between Ethicon and Dr. Lucente that

emerged during trial. Ethicon contends that our review should be limited to what was presented to the trial court at the time of its jurisdictional determination.

If evidence relating to Dr. Lucente is deemed reviewable, Ethicon asserts that this Court, for purposes of determining jurisdiction over Hammons' design defect and failure to warn claims, should only consider Dr. Lucente's conduct prior to 2005, because the design and the warnings had been set prior to 2005 when Ethicon first marketed Prolift. Thus, for the design defect or failure to warn claims to "arise out of" Ethicon's contacts with Pennsylvania, the contacts cannot be those that occurred after the product has been designed and the warnings drafted. Ethicon's Brief at 33-34. It, therefore, faults the Superior Court for relying upon Dr. Lucente's conduct in regard to Ethicon after 2005, including his involvement with marketing the device and advocating for the removal of the experimental drug designation by the American College of Obstetricians and Gynecologists.

Looking solely at the pre-2005 activities, Ethicon rejects reliance on Dr. Lucente's involvement with the clinical studies because "[t]here is no evidence that the studies would have been materially different without his participation, nor is there any evidence that, if different, they would have changed Ethicon's design decisions." Ethicon's Brief at 35. Ethicon additionally avers that the utilization of a lab to conduct clinical trials in Pennsylvania does not create "a sufficient factual predicate for the conclusion that the design defect claim arose in Pennsylvania" any more than it did in any of the other six states or France where the same research was conducted. *Id.* It asserts that the "location of those studies is a fortuity, not the basis for a cause of action." Ethicon's Brief at 38 (citing *BMS*, 137 S.Ct. at 1781).

Ethicon highlights the practical consequences on Pennsylvania's judicial system from adopting Hammons' broad formulation of specific personal jurisdiction. It observes

that when Pennsylvania courts assert jurisdiction over a suit between a non-resident plaintiff and a non-resident defendant, the court will be forced to apply the substantive law of another state. It notes that in this case the courts applied Indiana products liability law and New Jersey law governing punitive damages. Indeed, it observes that in the voluminous litigation on the Master Docket, only ten percent of the cases involve Pennsylvania law. Ethicon's Reply Brief at 7 n.2. It avers that "[d]isputes about foreign law will inevitably slow down protracted proceedings and proliferate appeals, as they have here." *Id.* at 7. Similarly, Amici Curiae Pennsylvania Manufacturers' Association *et al* highlights the burdens on jurors hearing cases that have minimal connection to Pennsylvania, asserting that "[w]hen a case has no connection to the community, . . . jurors may resent showing up for service, and the rationale for the jury pool to be a cross-section of the community is undermined." Pa. Mfrs.' Ass'n. *et al* Brief at 15.[17]

Hammons responds, arguing that specific personal jurisdiction is proper in this case based upon the "direct relationship between Ethicon's mesh-related activities in Pennsylvania and the lawsuit," specifically invoking its involvement with Secant and Dr. Lucente. Hammons' Brief at 14. In regard to Secant, Hammons asserts that Ethicon worked with Secant to develop and produce "virtually all the mesh used in its pelvic mesh products, including the mesh implanted into Ms. Hammons." *Id.* at 22. As did the Superior Court, Hammons relies upon the affidavits of Secant and Ethicon employees to demonstrate detailed interactions between Ethicon and Secant in regard to the production

---

[17] The following amici curiae have filed briefs in support of Ethicon: Chamber of Commerce of the United States of America, The Insurance Federation of Pennsylvania, Inc., and the Pennsylvania Chamber of Business and Industry; Pennsylvania Manufacturers' Association, Pennsylvania Coalition for Civil Justice Reform, National Association of Manufacturers, Pharmaceutical Research and Manufacturers of America, American Tort Reform Association, and Coalition for Litigation Justice, Inc.; Product Liability Advisory Council, Inc., Pennsylvania Defense Institute, and Philadelphia Association of Defense Counsel; Washington Legal Foundation

of the mesh. Hammons also references the repeated meetings of Ethicon employees at Secant "concerning mesh development, manufacturing, quality control, testing, and certification." *Id.* at 24. Hammons distinguishes the production process in this case from that of purchasing a product from a vendor. Instead of merely placing an order, Ethicon provided the proprietary material, required that it be knit according to its exact specifications, and demanded certification of those specifications prior to receiving the mesh. She asserts that Ethicon "controlled the project lock, stock, and barrel." *Id.* at 52.

Hammons maintains that jurisdiction is also proper based upon Ethicon's ties to Dr. Lucente's clinical testing of the mesh and his involvement in the subsequent promotion of the Prolift product. Hammons cites Ethicon's medical director as claiming that Dr. Lucente was Ethicon's "most important advocate in promoting other surgeons using the Prolift procedure across the country and across the world." *Id.* at 26. As a result of its interactions with Dr. Lucente, Hammons asserts that "Ethicon actively managed clinical studies and developed marketing plans for its mesh in Pennsylvania." *Id.* at 29.

Hammons avers that Ethicon's involvement with Secant and Dr. Lucente in Pennsylvania meets the requirement for jurisdiction under Pennsylvania's long arm statute, Subsection 5322(a)(3), which requires that Ethicon caused "harm or tortious injury by an act or omission in this Commonwealth." *Id.* (quoting 42 Pa.C.S. §5322(a)(3)). She emphasizes that her claims allege that she suffered injury as a result of the properties of the mesh and highlights that Ethicon "acted in multiple ways in Pennsylvania regarding the development, testing, production, and marketing of its pelvic mesh products." *Id.* at 29.

Hammons also asserts that jurisdiction is proper under the federal due process clause, which would likewise satisfy Subsection 5322(b). She argues that the facts of this case are stronger than those presented in *BMS*. She notes that in *BMS,* the High Court

required "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 30 (quoting *BMS*, 137 S.Ct. at 1780). She contends that unlike *BMS*, this case provides a strong "connection between the forum and the specific claims." *Id.* She argues that Ethicon's connections to Pennsylvania revolve around the mesh produced at Secant and researched by Dr. Lucente, which, in turn, is "the *sin[e] qua non* of the lawsuit - the material that caused her harm and whose properties are the focus of litigation." Hammons' Brief at 32.

Hammons rejects Ethicon's contention that the jurisdictional analysis must be determined on a claim-by-claim basis. Instead, she emphasizes that the High Court in *BMS* also "did not assess jurisdiction on a claim-by-claim basis focusing on the plaintiffs' allegations concerning a given claim and moving to each claim down the line." *Id.* at 38. Instead, she contends that the Court looked broadly at Bristol-Myers Squibb Company's ("Bristol-Myers") ties to California in regard to the non-resident plaintiffs, which the court found lacking. As discussed, Hammons argues that all of her claims arise from Ethicon's actions developing, producing, and testing the mesh in Pennsylvania that resulted in her catastrophic injuries, which she contends is sufficient to establish jurisdiction in the Commonwealth. *Id.*[18]

### III. Analysis

As noted, this Court granted review of this case to consider whether the due process clause of the Fourteenth Amendment and Pennsylvania's long arm statute permit Pennsylvania to assert personal jurisdiction over Ethicon in Ms. Hammons' case claiming injury resulting from implantation of the Prolift pelvic mesh medical device.

### A. Waiver

---

[18] The Pennsylvania Association for Justice and the American Association for Justice filed a brief in support of Hammons.

Generally, a challenge to personal jurisdiction, under Pennsylvania law, must be asserted by preliminary objection. Pa.R.C.P. 1028(a)(1); see also *Zappala v. Brandolini Property Management, Inc.*, 909 A.2d 1272, 1282 (Pa. 2006) (observing that "defenses that must be raised by preliminary objection, including improper venue, personal jurisdiction, and improper service . . . must be resolved at the very beginning of the case, before the court expends the time and energy to become deeply involved in the litigation"). Given that this case arose as part of the Philadelphia mass tort program, the first opportunity to dispute jurisdiction under the procedure established by the presiding judge was for Ethicon to file a motion to dismiss on the Master Docket in *In re Pelvic Mesh Litigation*, with a subsequent preliminary objection on Hammons' Individual Docket. As argued by Ethicon, it could not have filed preliminary objections raising personal jurisdiction to the Master Docket because it did not dispute the assertion of jurisdiction over the cases filed by those Plaintiffs who were residents of Pennsylvania. In these unusual circumstances, we agree with the Superior Court that Ethicon preserved its challenge to personal jurisdiction when it raised the issue in its motion to dismiss on the Master Docket and in its preliminary objections to Hammons' Individual Docket.

**B. Recent United States Supreme Court Personal Jurisdiction Jurisprudence**

The law of personal jurisdiction has been in flux over the last decade, with the United States Supreme Court issuing six opinions since 2011,[19] with two additional cases scheduled for consolidated argument in the October 2020 term.[20] Indeed, several of the

---

[19] *See, e.g.,* Adam N. Steinman, *Access to Justice, Rationality, and Personal Jurisdiction*, 71 Vand. L. Rev. 1401, 1403 n.1 (2018) (citing *BMS*, 137 S. Ct. 1773 (2017); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017); *Walden v. Fiore*, 571 U.S. 277 (2014); *Daimler*, 571 U.S. 117 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brow*n, 564 U.S. 915 (2011); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011)).

[20] *See Bandemer v. Ford Motor Company*, 931 N.W.2d 744 (Minn. 2019), *cert. granted*, 140 S.Ct. 916 (2020) (No. 19-369); *Ford Motor Company v. Montana Eighth Judicial*

High Court's recent cases were issued while Ms. Hammons' case travelled the Pennsylvania court system.

Despite these recent decisions, the underpinnings of personal jurisdiction are well established. The Due Process Clause of the Fourteenth Amendment imposes limits on a state court's jurisdiction over non-residents because "[a] state court's assertion of jurisdiction exposes defendants to the State's coercive power." *BMS*, 137 S.Ct. at 1779 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). Restrictions on jurisdiction, however, are not only to protect defendants from being forced to litigate in distant courts but also "are a consequence of the territorial limitations on the power of the respective States" under our federalist system. *Id.* at 1780 (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)).

While the phrasing of jurisdictional tests has evolved, the foundational precepts have remained constant since the seminal case of *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310 (1945). A forum state's jurisdiction over an out-of-state defendant satisfies due process only when the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316 (internal quotation marks and citations omitted).

Application of this jurisprudence to corporations, however, has confounded courts, practitioners, and law students alike, initially because a corporation does not have a corporal presence through which to fix jurisdiction but rather is "a fiction, although a fiction intended to be acted upon as though it were a fact." *Id.* at 316. In assessing personal jurisdiction over out-of-state corporate defendants, courts have recognized a distinction between situations where a corporation's connections are "so continuous and systematic

_____

*District Court*, 443 P.3d 407 (Mont. 2019), *cert. granted*, 140 S.Ct. 917 (2020) (No. 19-368), discussed *infra*.

as to render them essentially at home in the forum State," allowing for jurisdiction over causes of action unrelated to in-state activities, and those more limited connections with a state which restrict jurisdiction to causes of action "where there is an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919 (quoting *International Shoe Co.*, 326 U.S. at 317) (internal quotation marks and alterations omitted). The former has been deemed "general" or "all-purpose" jurisdiction, and the later, "specific" or "case-related jurisdiction."[21] The requirements of each have been the subject of the recent United States Supreme Court cases, culminating in *BMS*.

### 1. General personal jurisdiction

General personal jurisdiction applies where a defendant's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." *Daimler*, 571 U.S. at 138 (quoting *International Shoe Co.*, 326 U.S. at 318) (alteration in original). In 2011, the High Court explained the limitations of general jurisdiction in *Goodyear*, 564 U.S. at 919, emphasizing that general jurisdiction is proper only where a corporation's contacts are "so continuous and systematic as to render [it] essentially at home in the forum State."

More recently, the court further limited general jurisdiction by overtly rejecting the imposition of jurisdiction on defendants based only upon a corporation's "substantial, continuous, and systematic course of business" in a state. *Daimler,* 571 U.S. at 138. The Court declared that such a broad exercise of general jurisdiction would not allow out-of-state defendants "to structure their primary conduct 'with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 139 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Instead, the Court opined, general

---

[21] While specific and general personal jurisdiction apply also to individuals, our focus in the case at bar is on their applicability to corporations.

personal jurisdiction should be limited to where corporations are headquartered or incorporated. The Court left open the "possibility that in an exceptional case" a corporation could be at home in a forum where it is neither incorporated nor headquartered, if its operations were "so substantial and of such a nature as to render the corporation at home." *Id.* at 139 n.19.[22] It emphasized, however, that merely "continuous and systematic" contacts in the state would not result in the imposition of general personal jurisdiction. *Id.* at 139.

While Hammons initially attempted to invoke general personal jurisdiction over Ethicon in her complaint which pre-dated the High Court's decision in *Daimler*, all now agree that Ethicon is not "at home" in Pennsylvania under current Supreme Court jurisprudence. Instead, the focus of the parties' arguments have been upon specific personal jurisdiction.

### 2. Specific personal jurisdiction

Specific personal jurisdiction is not as straightforward as general personal jurisdiction and, instead, requires consideration of the factual nuances of jurisdictional connections in each case. The High Court has explained that specific jurisdiction involves "a more limited form of submission to a State's authority," elaborating that when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, . . . it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011) (plurality).

---

[22] The example given of an "exceptional case" was *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). In that case, the defendant was incorporated and operated mines in the Philippines but ceased its operations there during the Japanese invasion in World War II, during which time the corporation's president managed operations from an office he opened in Ohio. In that unusual situation, the Court found general jurisdiction in Ohio justified because it was the "corporation's principal, if temporary, place of business." *Daimler*, 571 U.S. at 130 (internal citation omitted).

Again, at its most simplistic, the question for specific personal jurisdiction continues to be whether the defendant has sufficient "minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316 (internal quotation marks and citations omitted). Requiring minimum contacts satisfies due process by ensuring that the defendant may "reasonably anticipate" where it may be "haled into court" based upon which forums it has "purposefully avail[ed] itself of the privilege of conducting activities." *Burger King Corp.*, 471 U.S. at 474. The High Court has opined that this requirement ensures that a defendant will not be subject to jurisdiction "solely as a result of random, fortuitous, or attenuated contacts." *Id.* at 475 (internal quotation marks omitted).

As Justice Sotomayor cited in her dissenting opinion in *BMS*, a preeminent treatise on federal practice and procedure observed that courts have synthesized the specific personal jurisdiction caselaw into a more manageable three-part test:

> (1) Did the plaintiff's cause of action arise out of or relate to the out-of-state defendant's forum-related contacts?
>
> (2) Did the defendant purposely direct its activities, particularly as they relate to the plaintiff's cause of action, toward the forum state or did the defendant purposely avail itself of the privilege of conducting activities therein?
>
> (3) [W]ould the exercise of personal jurisdiction over the nonresident defendant in the forum state satisfy the requirement that it be reasonable and fair?[23]

---

[23] To determine whether personal jurisdiction would be "reasonable and fair" under the third part of the test, courts will consider the following factors: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp.*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292) (internal quotations marks removed).

4 Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice & Procedure Civil* § 1069 (4th ed. 2015 & Supp. 2020) ("*Federal Practice & Procedure Civil*"); *BMS*, 137 S.Ct. at 1785 (Sotomayor, J. dissenting).

Ethicon and Hammons' arguments before this Court focus upon the first prong of this test: whether her cause of action arises out of or relates to Ethicon's contacts with Pennsylvania. Indeed, the second and third factors are not at issue in this case where Ethicon has engaged in business in Pennsylvania and where it will be litigating the related claims of Pennsylvania Plaintiffs such that jurisdiction here is reasonable and fair. Before addressing the question of whether Hammons' cause of action arises out of Ethicon's contacts with Pennsylvania, we first review the United States Supreme Court's recent decision in *BMS*, which directly informs the questions before us.

**3. *Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773 (2017)**

As in the case at bar, the High Court in *BMS* addressed a due process challenge to the invocation of specific personal jurisdiction in a case brought by non-resident plaintiffs against a non-resident corporation. In that case, 86 California residents and 592 residents from other states filed an action in California state court against Bristol-Myers claiming injuries resulting from ingestion of the blood-thinning drug Plavix. As with Ethicon and the Pennsylvania Plaintiffs, Bristol-Myers did not contest the exercise of personal jurisdiction in regard to the California-plaintiffs' claims, but instead it asserted that the California court lacked jurisdiction over the claims of the non-California plaintiffs.

Bristol-Myers emphasized that it was incorporated in Delaware with its headquarters in New York. Although the company had research and laboratory facilities in California, those facilities were not involved in the development of Plavix. Similarly, while Plavix was sold in California and the company maintained sales representatives

and a state government advocacy office in California, the non-California plaintiffs did not claim that they were treated in California, nor did they aver that they obtained their medicine from physicians or any other sources in California. Moreover, the company did not develop, "manufacture, label, package, or work on the regulatory approval of the product in California," nor did it devise its national marketing strategy in the state. *BMS*, 137 S.Ct.at 1778.

The United State Supreme Court reversed the California courts' decision finding specific personal jurisdiction. In so doing, the High Court rejected the California Supreme Court's "sliding scale" approach to specific personal jurisdiction, which it described as allowing for a reduced strength of connection between the forum and the plaintiff's specific claims "if the defendant has extensive forum contacts that are unrelated to those claims." *Id.* at 1781. It viewed this standard as a "loose and spurious form of general jurisdiction." *Id.*

The High Court highlighted the absence of an "adequate link between the State and the nonresidents' claims[,]" emphasizing that "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* The Court specifically rejected the relevance of the overlap between the claims of the California and non-California plaintiffs: "The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California - and allegedly sustained the same injuries as did the nonresidents - does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis removed)

It additionally opined that it was not "sufficient - or even relevant - that BMS conducted research in California on matters unrelated to Plavix. What is needed - and what is missing here - is a connection between the forum and the specific claims at issue."

*Id.* The Court observed, however, that while California did not have specific personal jurisdiction over the claims of the non-California plaintiffs against Bristol-Myers, the decision did not "prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over BMS[,]" such as New York or Delaware. *Id.* at 1783.

Justice Sotomayor filed a lone but forceful dissent. Referencing the Court's recent decision in *Daimler*, which she viewed as "impos[ing] substantial curbs on the exercise of general jurisdiction," Justice Sotomayor argued that the decision in *BMS* was a "first step toward a similar contraction of specific jurisdiction by holding that a corporation that engages in a nationwide course of conduct cannot be held accountable in a state court by a group of injured people unless all of those people were injured in the forum State." *BMS*, 137 S.Ct. at 1784 (Sotomayor, J, dissenting). She asserted that the decision, while claiming to apply established precedent, actually resulted in a dramatic shift. She feared that the holding would "make it impossible to bring a nationwide mass action in state court against defendants who are 'at home' in different States." *Id.* She argued that there was "nothing unfair about subjecting a massive corporation to suit in a State for a nationwide course of conduct that injures both forum residents and nonresidents alike." *Id.* She instead opined that "[p]ermitting the nonresidents to bring suit in California alongside the residents facilitates the efficient adjudication of the residents' claims and allows it to regulate more effectively the conduct of both nonresident corporations like Bristol-Myers and resident ones like McKesson[,]" which was a substantial national distributor of Plavix for Bristol-Myers. *Id.* at 1787.

Echoing Justice Sotomayor as well as other commentators and courts, Ethicon asserts that the High Court narrowed specific personal jurisdiction in *BMS* to require a claim-by-claim analysis of a defendant's contacts with a jurisdiction. In other words, a

plaintiff would need to demonstrate that the defendant's actions in the state can be tied to the elements of each claim asserted. Proponents of this view point to language in *BMS* holding that specific personal jurisdiction failed in *BMS* due to the absence of "a connection between the forum and the specific claims at issue." *BMS,* 137 S.Ct. at 1781.

While language focusing on the term "specific claims" can be excerpted from the *BMS* decision to support Ethicon's reading, we are hesitant to conclude that the Court dramatically narrowed the construct of specific personal jurisdiction to require a claim-by-claim analysis *sub silentio*. We observe that Justice Alito, writing for the majority, opined that the case involved a "straightforward application . . . of settled principles of personal jurisdiction." *Id.* at 1783. Indeed, we recognize that the Court's decision in *BMS* relied upon its prior phrasings of specific personal jurisdiction, which utilized a variety of terminology to describe the necessary connections. This terminology invokes not merely connections to "specific claims" but broader links between the defendant and the "suit" or the "controversy." Specifically, the Court opined, that "[i]n order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* at 1780 (quoting *Daimler*, 571 U.S. at 127) (alterations and internal quotation marks removed). Additionally, the Court held that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quoting *Goodyear*, 564 U.S. at 919).

We recognize that this broader view of the contacts required for specific personal jurisdiction is supported by the High Court's precedent on the issue. In *Goodyear*, the Court's emphasis was on the "underlying controversy" rather than the individual claims, opining that specific personal jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919

(internal alterations, citation, and quotation marks omitted); *BMS, 137* S.Ct. at 1780. Similarly, in *Walden v. Fiore*, 571 U.S. 277, 284 (2014), the Court looked not to the elements of each individual claim for purpose of specific personal jurisdiction but rather "focuse[d] on the relationship among the defendant, the forum, and the litigation." *Id.*

Moreover, this broader terminology, utilizing concepts of "suit," "controversy," and "litigation" as opposed to individual "claims," is consistent with the fundamental due process considerations underpinning specific personal jurisdiction jurisprudence. As noted, jurisdictional limitations provide "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp.*, 471 U.S. at 472 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). The Supreme Court in *Walden* explained that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. We agree that the focus of the jurisdictional question should be the actions of the defendant in relation to the forum, not the fortuity of which claims a plaintiff's counsel includes in a complaint.[24]

Moreover, we observe that the High Court's discussion of the case before it in *BMS* is consistent with a suit- or controversy-based focus rather than a claim-by-claim analysis. The Court looked to the relation between Bristol-Myers' actions in California and the

---

[24] Scholars have similarly reasoned that an individual plaintiff's claims should not be the basis of a jurisdictional analysis, which should instead focus on "the defendant's relationship to the forum State:" "Indeed, to treat each plaintiff's claim as an independent unit that must independently qualify for specific jurisdiction is contrary to the way courts conceptualize jurisdiction in other contexts," observing that supplemental jurisdiction for federal subject matter jurisdiction is based upon whether the plaintiff's claims "arise from a common nucleus of operative fact." Steinman, 71 Vand. L. Rev. at 1458 (emphasis and internal quotation marks removed).

plaintiffs' injuries resulting from ingesting the medication, rather than the factual predicate of the specific claims raised by the plaintiffs.

We conclude that the Court in *BMS* did not reject its prior phrasings of specific personal jurisdiction, but rather incorporated the broader terminology emphasizing the connections between the controversy, litigation, or suit and the defendant's actions in the forum state. Accordingly, absent further clarification from the High Court,[25] we decline to restrict jurisdiction by focusing narrowly on the elements of plaintiff's specific legal claims, which could unnecessarily restrict access to justice for plaintiffs. Instead, we look more

---

[25] As noted, the Supreme Court recently granted certiorari in two additional cases involving specific personal jurisdiction and the "arise out of or relate to" requirement. *Bandemer v. Ford Motor Company*, 931 N.W.2d 744 (Minn. 2019), *cert. granted*, 140 S.Ct. 916 (2020) (No. 19-369); *Ford Motor Company v. Montana Eighth Judicial District Court*, 443 P.3d 407 (Mont. 2019), *cert. granted*, 140 S.Ct. 917 (2020) (No. 19-368). In its petitions in these cases, Ford Motor Company raised the following question: "Whether the 'arise out of or relate to' requirement is met when none of the defendant's forum contacts caused the plaintiff's claims, such that the plaintiff's claims would be the same even if the defendant had no forum contacts." Pet. for Writ of Cert. filed by Ford Motor Company in *Ford Motor Co. v. Bandemer*, No. 19-369 and *Ford Motor Co. v. Montana Eighth Judicial District Court,* No. 19-368. Argument in these cases was originally scheduled for April 2020, but was postponed to the October 2020 Term due to the COVID-19 pandemic.

These cases involve plaintiffs who suffered injury in the forum state while driving a vehicle designed, manufactured, and sold by the defendant in a separate state. The defendants in these cases are asserting that plaintiffs must establish a "causal connection" between the defendant's contacts in the state and the plaintiff's claims, and contend that Ford's actions in the relevant states, which included advertising, sales, data collection, and service of other automobiles, was not related to the plaintiffs' claims sounding in design defect, failure to warn, and negligence in regard to the specific vehicles driven by the plaintiffs.

Relevantly, while the parties in the case at bar dispute whether Ethicon's connections to Pennsylvania via Secant's production of the mesh are sufficient, there is little controversy that the mesh is causally related to Plaintiffs' asserted injuries. Thus, it does not appear that the question raised in the *Ford* cases would be directly controlling on the case at bar.

broadly to determine whether the case as a whole establishes ties between the defendant's actions in the forum state and the litigation.

### C. Scope of Jurisdiction under Subsection 5322(c)

Ethicon also asserts that Subsection 5322(c) of Pennsylvania's long arm statute should be read restrictively to require a claim-by-claim jurisdictional analysis based upon its use of the term "cause of action." The section provides that "only a cause of action or other matter arising from acts enumerated in subsection (a), or from acts forming the basis of jurisdiction under subsection (b), may be asserted against him." 42 Pa.C.S. § 5322. Indeed the "cause of action . . . arising from" language also appears in subsection (a), which provides jurisdiction "as to a cause of action or other matter arising from such person" causing any of the listed activities including "(3) [c]ausing harm or tortious injury by an act or omission in this Commonwealth." *Id.*

While the phrase could be viewed narrowly to mean the specific claims pleaded in the complaint, we conclude that the term also has a broader connotation encompassing the same concepts used in the United States Supreme Court's jurisprudence relating to suit, controversy, and litigation. Indeed, Black's Law Dictionary defines "cause of action," *inter alia,* as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person; claim." BLACK'S LAW DICTIONARY 235 (8th ed. 2004).[26] We are also guided by the clear legislative expression in Subsection 5322(b) to apply Pennsylvania's jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). It would be inconsistent to mandate that Pennsylvania's long arm statute be read as broadly as possible while in the same breath confining our courts to a more restrictive

---

[26] Black's Law Dictionary also defines it as "[a] legal theory of a lawsuit;" and "[l]oosely, a lawsuit." *Id.* None of these definitions requires the restrictive reading ascribed to the term by Ethicon.

claim-based jurisdiction using the term "cause of action," which itself can be read to encompass a suit- or controversy-based application. We decline to adopt that analysis absent clear guidance from the High Court to apply a claim-by-claim jurisdictional analysis. Moreover, Ethicon fails to cite any Pennsylvania cases that have applied this provision so narrowly.

### D. Application

Pennsylvania courts have repeatedly opined in addressing a defendant's challenge to personal jurisdiction that the burden is first on the defendant, as the moving party, to object to jurisdiction; once raised by a defendant, the burden of establishing personal jurisdiction under Pennsylvania's long arm statute is placed on the plaintiff asserting jurisdiction. *Biel v. Herman Lowenstein, Inc.*, 192 A.2d 391, 393 (Pa. 1963) ("It is only when the jurisdictional issue is properly raised that the burden of proof is upon the party asserting the jurisdiction."); *see also Frisch v. Alexson Equipment Corp.*, 224 A.2d 183, 187 (Pa. 1966); *Schiavone v. Aveta*, 41 A.3d 861, 865 (Pa. Super. 2012), *aff'd per curiam*, 91 A.3d 1235 (Pa. 2014). The defendant can respond by demonstrating that the imposition of jurisdiction would be unfair. We recognize that this practice is consistent with federal jurisprudence. See 4 *Federal Practice & Procedure Civil* § 1069 ("[T]he plaintiff initially bears the burden of showing that the defendant purposefully directed its activities at residents of the forum state, and that the claim arises out of or relates to those activities. The defendant then bears the burden of showing that, in light of other factors, the assertion of jurisdiction would be unreasonable or unfair.").

Applying a suit- or controversy-based analysis of specific personal jurisdiction, we find jurisdiction proper in the case at bar. Here, we observe that Hammons claimed that she was injured as a result of the implantation of the Prolift Kit, specifically averring that her injuries resulted from characteristics of the mesh, which was the only part of the

medical device that remained in her body after the surgery. As has been noted, Ethicon contracted for Secant to produce the mesh, which involved Ethicon shipping its proprietary filament to Secant's Bucks County facilities to be knit according to Ethicon's detailed specifications and later certified as having met those specifications, before being shipped back to Ethicon. Indeed, in its briefing to this Court, Ethicon emphasizes that at all times the filament and the mesh were Ethicon's property, asserting that it only contracted for Secant to weave the filament. Ethicon's Reply Brief at 9 n.3. The process also necessitated site visits by Ethicon employees and multiple communications between those employees and representatives of Secant to ensure that the production process, and ultimately the mesh, met Ethicon's requirements.

We contrast these facts with the scenario where Ethicon orders a generic component of the Prolift Kit, for example the paper upon which the warnings are printed. We would be hard-pressed to find jurisdiction justified based solely upon the online order of stock paper from a Pennsylvania supplier, given that Ethicon's involvement would be minimal and generally irrelevant to the litigation. Conversely, in the case at bar, Ethicon was substantially and directly involved in the production of the mesh in Pennsylvania, where the mesh was what Hammons asserted caused her injuries and which served as the critical factual component of each of Hammons' claims.

We note that Ethicon's involvement with the production of the mesh in Pennsylvania is distinct from the alleged tie, or lack thereof, between Bristol-Myers and its distributor McKesson in *BMS*. The High Court emphasized the absence of an allegation that Bristol-Myers "engaged in relevant acts together with McKesson in California." *BMS*, 137 S.Ct. at 1783. In other words, there was nothing that tied Bristol-Myers' interactions with McKesson directly to the injuries suffered by the non-California plaintiffs. Indeed, the non-California plaintiffs in *BMS* could not establish that the Plavix

that they ingested had been distributed by McKesson. Instead, the only tie between the non-California plaintiffs' cases and Bristol-Myers' actions in California was the fact that their claims mirrored the claims asserted by the California plaintiffs who suffered injuries in the state by prescription, purchase, or ingestion of Plavix. By contrast, Ethicon was involved in the production of the mesh by Secant in Pennsylvania, and Ms. Hammons claimed her injuries resulted from that mesh. Thus, there is a direct connection between Ms. Hammons' cause of action and Ethicon's actions in Pennsylvania.[27]

As the High Court explained in *International Shoe*:

> The exercise of [the privilege of doing business in the forum] may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

*International Shoe Co.*, 326 U.S. at 316. We do not find it undue for the Philadelphia County Court of Common Pleas to exercise specific personal jurisdiction over Ethicon. Instead, applying Subsection 5322(c) and the federal due process clause, we conclude that the suit, specifically Hammons' claims that she suffered injury resulting from the transvaginal mesh device, arises out of and indisputably relates to the mesh that was manufactured in Bucks County, Pennsylvania, by Secant under the careful supervision of

---

[27] With all due respect to the Chief Justice, his dissenting opinion misses the thrust of this opinion. In applying the teachings of the majority in *BMS*, our substantive discussion serves to distinguish the facts before us from those presented to the United States Supreme Court in *BMS*. As set forth above, while the *BMS* plaintiffs' injuries and resulting claims were unrelated to Bristol-Myers's activities in California, Hammons' injuries were specifically related to the mesh produced in Pennsylvania under Ethicon's direction and supervision. It is axiomatic that when one changes the facts, one changes the result, as occurred in the instant matter.

Ethicon.[28] Moreover, as noted *supra,* the other two prongs of the specific jurisdiction test are met in this case because Ethicon purposefully availed itself of the privilege of conducting business in the Commonwealth and because it would not be unfair to subject Ethicon to jurisdiction here given that it is already litigating the related claims brought by Pennsylvania Plaintiffs across the state line from New Jersey, where it is headquartered and incorporated. Accordingly, we affirm the judgment of the Superior Court.

Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Donohue files a concurring opinion in which Justice Wecht joins.

Chief Justice Saylor files a dissenting opinion.

---

[28] As we conclude that jurisdiction is proper based on Ethicon's involvement in Secant's weaving of the mesh in Pennsylvania, we do not speak to the relevance or sufficiency of Dr. Lucente's activities.